Argued June 23, reversed and remanded September 8, petition
for rehearing denied November 8, 1972

## STATE OF OREGON, *Respondent, v.*
## LAWRENCE STACY WILLIAMS (No. 77934),
### *Appellant.*
500 P2d 722

*F. E. Glenn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the briefs was Gary D. Babcock, Public Defender, Salem.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the briefs were Lee Johnson, Attorney General, John W. Osburn, Solicitor General, and Thomas H. Denney, Assistant Attorney General, Salem.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

FORT, J.

Defendant was convicted of second degree murder. Former ORS 163.020. He appeals asserting several errors.

The principal problem relates to the denial of a motion for a new trial, based upon the failure of the state to advise the defendant of knowledge in its possession concerning the lengthy arrest record of the decedent. The chief issue at the trial was whether the defendant shot the deceased in self-defense.

Following arraignment, the state, at the request of defendant's counsel and in accordance with its usual policy, made its file available to him. At that time, the file contained reports from the Oregon State Police and the local sheriff's office indicating that a check showed no prior local record for the deceased. Counsel, in the preparation and trial of the case, relied on this information.

Shortly after counsel had completed his examination of the state's file, the latter, as a part of its routine check, received from the FBI a "rap" sheet, which indicated that the decedent, over a period of more than

ten years, had been arrested numerous times for drunkenness, driving under the influence of liquor, and once for destruction of private property. It indicated that he had been convicted of most of those charges. All these activities had occurred either in Nevada or California. The most recent arrest had occurred about 18 months prior to the homicide.

This information was not made available to the defendant nor was it called to his counsel's attention until after the jury had retired and was deliberating. No contention is made that it was deliberately secreted or withheld by the state. It simply was not received and placed in the state's file until after defendant's counsel had completed his examination of that file.

Both decedent and defendant had had substantial quantities of beer prior to the shooting. There was direct conflict in the testimony concerning who was the aggressor. It was the defendant's theory, supported by substantial evidence, that the decedent became very aggressive under the influence of the liquor. The decedent was at least six inches taller and 70 pounds heavier than the defendant.

Defendant contends that had he had access to the information contained in the "rap" sheet at the time it became available to the state, he would have had an opportunity to investigate the decedent's reputation for aggressive behavior while under the influence of intoxicating liquor, and based thereon, to produce evidence relevant thereto. *State v. Hansen,* 3 Or App 378, 474 P2d 17 (1970).

In *Hanson v. Cupp,* 5 Or App 312, 320, 484 P2d 847 (1971), this court said:

"In *Brady v. Maryland* [373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963)], supra, the court said:

" 'The principle of *Mooney v. Holohan* is not

punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused * * *.' 373 U.S. at 87.

*Brady* focuses the deprivation of due process squarely upon the harm to defendant and not upon the motives of the prosecution. It thus approves of cases holding 'negligent suppression' to be a violation of due process. In this light it rationally matters not whether the evidence favorable to the defendant and in the hands of the state was or was not requested by the defendant. Nor does it matter whether it was negligently, accidentally or maliciously withheld. The sole questions are:

"(1) Did the state have such evidence?

"(2) Was it evidence of substantial significance for the defense—was it evidence which, if believed by a trier of fact, would be seriously considered by that trier of fact in determining guilt or innocence?"

Here, the defendant, pursuant to the district attorney's "open file" policy, was furnished a file that apparently negated the existence of evidence that might well have had substantial significance for the defendant. In *Hanson v. Cupp,* supra, we also said, adopting the language of *Barbee v. Warden, Maryland Penitentiary,* 331 F2d 842 (4th Cir 1964):

" '* * * In gauging the non-disclosure in terms of due process, the focus must be on the essential fairness of the procedure and not on the astuteness of either counsel.',

and

" '* * * If the police silence as to the existence of the reports resulted from negligence rather than guile, the deception is no less damaging.' 331 F2d at 846." 5 Or App 312, 321, 484 P2d 847 (1971).

In *Giles v. Maryland,* 386 US 66, 87 S Ct 793, 17 L Ed 2d 737 (1967), decided after *Brady,* the Supreme

Court considered and left open the question of the degree of prejudice which defendant must show. It said:

> "* * * Thus the case presents the broad questions whether the prosecution's constitutional duty to disclose extends to all evidence admissible and useful to the defense, and the degree of prejudice which must be shown to make necessary a new trial. We find however, that it is unnecessary, and therefore inappropriate, to examine those questions. * * *" 386 US at 73-74.

Concerning "the degree of prejudice which must be shown to make necessary a new trial," the state relies upon *State v. Achziger,* 10 Or App 198, 209, 497 P2d 383, 11 Or App 574, 502 P2d 1162 (1972), Sup Ct *review denied* (1973). In that case we upheld the denial of a motion for a new trial based upon evidence known to the prosecution but not revealed prior to or during the trial to the defense. That case was tried to the court sitting without a jury. We held:

> "The court's statement that this evidence would have had no influence on its decision conclusively establishes that the evidence was not exculpatory or material to the defense, so as to warrant reversal. See *Brady v. Maryland,* 373 US 83, 87, 83 S Ct 1194, 10 L Ed 2d 215 (1963); Annotation, 34 ALR 3d 16, 52, § 6 (1970). * * *"

Here, not only is there no finding concerning the probability of prejudice resulting from the nondisclosure, but this case was tried to a jury thus precluding such a finding of fact. That case, therefore, is not in point.

The Supreme Court of California recently had occasion to consider at length the failure of the state in a rape case to disclose a "rap" sheet. This revealed an arrest record of the husband of the prosecutrix,

who was himself a principal witness for the state. The "rap" sheet set forth numerous entries including a felony conviction and his commitment to state hospitals as a sex degenerate and a psychotic. The defense was that the admitted acts of intercourse were consensual and were the result of the husband pandering his wife to the defendant.

The court in holding the failure to disclose the "rap" sheet data, even though not requested, was a violation of due process, said:

> "In these circumstances, the credibility of the Millers and petitioner was the crucial issue. * * * Had the defense known that Mr. Miller had also suffered a felony conviction and had been committed to a state hospital as a sexual degenerate as a youth and again committed after he reached 21 years of age, it is reasonably probable that it could have obtained a different verdict. Evidence as to Mr. Miller's felony conviction and his mental stability when coupled with the obvious mental limitations of Mrs. Miller may well have caused the jury to refuse to find beyond a reasonable doubt that their version of the occurrence was true." *In re Ferguson,* 5 Cal3d 525, 96 Cal Rptr 594, 487 P2d 1234, 1241 (1971).

*See also, Levin v. Clark,* 408 F2d 1209 (Cir DC 1967); *United States v. Keogh,* 391 F2d 138 (2d Cir 1968); *Ashley v. State of Texas,* 319 F2d 80 (5th Cir 1963).

We conclude that the "rap" sheet here would reasonably have been anticipated to enable the production of "evidence [①] of substantial significance for the defense" within the rule of *Hanson v. Cupp,* supra, upon the crucial issue of self-defense. Such evidence would reflect directly on the sole issue—that of self-

---

① *See* Rich v. Cooper, 234 Or 300, 305-306, 380 P2d 613 (1963); 1 Wigmore, Evidence § 198 (3d ed 1940).

defense—upon which guilt or innocence depends. The motion for a new trial should have been granted. Our conclusion makes it unnecessary to consider the other assignments of error.

Reversed and remanded.

THORNTON, J., dissenting.

I believe that granting defendant a new trial on the facts presented here is unjustified, and constitutes an unwarranted extension of *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), and *Hanson v. Cupp,* 5 Or App 312, 484 P2d 847 (1971). I therefore respectfully dissent.

Turning first to the decided cases on this question, our attention has not been called to, nor have I been able to find, any reported case (except *In re Ferguson,* 5 Cal 3d 525, 535, 96 Cal Rptr 594, 487 P2d 1234, 1241 (1971), relied upon in the majority opinion), that has gone so far as to hold that failure to show defendant a "rap sheet" constituted withholding of essential information. See the exhaustive annotation in 34 ALR3d 16-167 (1970). *In re Ferguson, supra,* is clearly distinguishable on the facts because there the information withheld was crucial to the defense and cast grave doubt on the credibility of one of the state's chief witnesses.

*Levin v. Clark,* 408 F2d 1209 (DC Cir 1967), *United States v. Keogh,* 391 F2d 138 (2d Cir 1968), and *Ashley v. State of Texas,* 319 F2d 80 (5th Cir 1963), also cited in the majority opinion, all involved nondisclosures of much more serious import.

In *Levin,* a grand larceny case, the prosecution failed to reveal to the defense a bank officer's statement which might have enabled defense to procure

statements from bank personnel which would have materially aided the defense.

In *Keogh,* the prosecution failed to turn over to the defense an unrequested FBI report on financial records of a prosecution witness.

In *Ashley,* the prosecution failed to disclose to defendants' counsel the fact known to the district attorney of the existence of professional opinions of a psychiatrist and a psychologist engaged by the state that defendants were legally incompetent.

Here, the "rap sheet" information reflected only that the victim had, on many occasions in the past 10 years, been arrested in Nevada and California for public drunkenness, driving while intoxicated and once for destruction of private property. In most instances he was convicted.

At the trial in the case at bar the evidence was that both defendant and the victim had been drinking prior to the fatal shooting. The victim's drinking habits were known to the defense and were inquired into by defendant on cross-examination of numerous witnesses.

Defendant's counsel contends that had he known of these matters he would have been able to investigate deceased's reputation in each of the communities in which the victim had previously lived, and that such investigation might have uncovered evidence that the deceased had a reputation for violence. I am unable to see how this expression of a mere possibility constitutes a showing that defendant was prejudiced in making his defense by not having seen the "rap sheet" in question.

It is elementary that a defendant charged with homicide who relies on self-defense normally endeavors

to establish (a) that the victim was the aggressor and (b) that he had a reputation for physical violence.

According to the record defendant's counsel had the services of an investigator at his disposal in preparing for trial. There is nothing in the record to indicate that either defendant, his counsel or their investigator asked about an FBI "rap sheet" until after trial and conviction. There is no contention that the nondisclosure by the district attorney's office was willful and deliberate.

Defendant argues that the reason he did not investigate his victim's character and reputation was because the district attorney's file showed that the deceased had no local or Oregon criminal record, and that the district attorney failed to call their attention to the FBI "rap sheet" which arrived some days later.

I find it impossible to accept defendant's argument and overturn the conviction on this account.

In addition, none of the offenses shown on the sheet indicated that defendant had committed acts of physical violence against the person of another. Further, none of the convictions shown would have been admissible in this case.[1]

An examination of the record satisfies me that defendant had full opportunity to present his defense of self-defense, that he had a fair trial and that he was convicted upon substantial evidence of guilt.

An appellate court reviewing a conviction is not governed by mere technicalities based on imaginary possibilities. *State v. Hibberd,* 123 Or 490, 262 P 950 (1928).

---

[1] See cases collected in Annotation, 121 ALR 380, 386 (1939).