Argued August 23, reversed and remanded September 18,
petition for rehearing denied November 8, 1972

## STATE OF OREGON, *Respondent, v.* MICHAEL THOMAS IRELAND (No. 71-1693-C), *Appellant.*

500 P2d 1231

*F. E. Glenn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

SCHWAB, C.J.

Defendant was convicted of selling marihuana to one David Ryan, a police undercover narcotics agent. The issue on which this case turns on appeal is the court's refusal to allow the defendant's motion for a continuance to investigate the prior criminal record of Ryan, the state's chief witness.[1]

The defendant was indicted on December 1, 1971, and entered a plea of not guilty on December 14, 1971, at which time the court set the case for trial commencing January 20, 1972. For reasons not attributable to the state or the court the trial date was later changed to February 9, 1972. On January 31, 1972, court-appointed counsel for the defendant moved the court for an order requiring the Jackson County district attorney to provide a list of criminal convictions of the witnesses the state intended to call at trial. The motion was orally argued on February 8. At that time the state advised the court that it did not have an FBI "rap" sheet but it did have a teletype indicating that one of the state's witnesses had been convicted on prior

[1] The parties have filed several post-argument motions. Our ruling here renders the motions moot.

occasions. The court then in effect denied the defendant's motion, stating, however, to the deputy district attorney:

> "* * * I'm not going to require you to check with the F.B.I. or any other police agency to see whether any of your witnesses have criminal convictions, but will you furnish the information that you just mentioned to * * * [defense counsel] * * *?"

As a part of the colloquy which took place at the time the defendant's motion was argued the deputy district attorney asked the court to make a pretrial ruling that it would suppress any evidence of prior convictions of a state's witness unless the defendant was prepared with exemplified copies of judgments of conviction with which to impeach the witness. The court stated:

> "I'm not going to rule on that at this time because I think that is a matter that will have to come up during the trial of the case. First, I do not know whether the witness will testify, if he does testify I do not know whether defense counsel will want to impeach him on any prior convictions, if he does then he must be prepared to in the proper form * * *."

On February 9 trial commenced and the state called Ryan as its second witness. Ryan testified that he was an undercover agent and that he purchased marihuana from the defendant. When he had completed his testimony on direct examination, defense counsel moved for a continuance, stating:

> "* * * [T]his morning I have obtained from the Medford Police Department a partial report regarding Mr. Ryan. This report is incomplete * * *. It states in the teletype that the record of the man is two pages long, is too lengthy to be sent

by teletype. I would request time in which to obtain his prior record. \* \* \* Now, it appears to me he may have a prior record that is greater than that he admitted to in the past trials. I do not know, and my opinion is strictly based on the teletype message."

The record does not indicate whether the teletype report which defense counsel received on the morning of February 9 was the same teletype report the deputy district attorney had acknowledged having in his possession on the previous day. It seems unlikely that it was not.

The motion for a continuance was denied. Defense counsel was permitted, without objection, to cross-examine Ryan concerning his past criminal record.[2]

Three other witnesses, including Ryan's wife, testified they were present at the sale of marihuana. The defendant, his wife and two other witnesses who were allegedly present at the time in question denied that the sale took place.

Clearly the issue of guilt or innocence turned in large part on the jury's evaluation of the credibility of Ryan. The state is hardly in a position to contend that prior criminal convictions are not relevant on the issue of credibility. As defense counsel notes in his brief it is difficult to imagine that the state would find it a burden to obtain an FBI "rap" sheet covering a key defense witness with a record too long to transmit by teletype. It follows that on these facts the record of Ryan's prior convictions was exculpatory evidence, i.e., it "would be seriously considered by \* \* \* [the] trier of fact in determining guilt or innocence." *Han-*

---

[2] The completeness and accuracy of Ryan's answers were of course dependent solely on Ryan's veracity, except insofar as his answers could be measured against an incomplete record.

*son v. Cupp,* 5 Or App 312, 484 P2d 847 (1971). *See also, State v. Williams,* 11 Or App 255, 500 P2d 722 (1972), citing with approval *In re Ferguson,* 5 Cal3d 525, 96 Cal Rptr 594, 487 P2d 1234, 1241 (1971).

Generally speaking, the duty of the state to provide exculpatory evidence upon request does not include a duty to develop such evidence but only to turn over that exculpatory evidence which is in its possession. However, a record of prior convictions, an FBI "rap" sheet being its most usual form, is something which the state can normally readily obtain at nominal cost of time or money—something which is not so readily or easily obtainable by a private citizen. In effect FBI "rap" sheets are in the "constructive" possession of the state in almost every case.

■ Basic fairness requires that the state, unless in a particular case good reason to the contrary exists, honor a timely request by a defendant in a criminal case to obtain and hand over to the defendant an FBI "rap" sheet or a similar document when the defendant establishes that it will probably be relevant to the ultimate issue—guilt or innocence. At what point the state should do so will of course depend upon the posture of each case. This duty does not include obtaining exemplified copies of judgments of conviction, which are as readily available to private citizens as to the state. Nor should this holding be construed as ordinarily requiring the state to develop exculpatory evidence of any other nature upon request by a defendant.

■ We recognize that the appeal here is not from the order denying defendant's request that the state obtain and turn over to the defendant a record of

prior convictions, but rather for a continuance to enable the defendant to obtain such a record. Nevertheless, it follows that if it was error to fail to require the state to furnish such information upon a timely request, it was also error not to allow the defendant time to attempt to obtain the same information by his own efforts.

Reversed and remanded.

FOLEY, J., dissenting.

This case comes before us on appeal by defendant from an order denying a motion for continuance during his trial on a charge of selling marihuana. While I agree with nearly everything appearing in the majority opinion, I do not believe this case should be reversed.

Motions for continuances during a trial to obtain additional evidence are addressed to the sound discretion of the trial court. *See, e.g., State v. Otten,* 234 Or 219, 221-23, 380 P2d 812 (1963); *State v. Edwards,* 3 Or App 179, 185-86, 471 P2d 843, Sup Ct *review denied* (1970).

In this case the defendant moved prior to trial for

"* * * a list of the criminal convictions of each of the witnesses which the State of Oregon may call at the trial of the above-entitled case."①

On the day before trial the prosecutor advised the trial court that he had a teletype indicating that one of the state's witnesses had a prior criminal record, but that he did not have a full report of that record.

---

① While the state usually possesses the F.B.I. record of the defendant in a given case, it is less than usual that the state have the F.B.I. record of witnesses.

The trial court thereupon asked the prosecutor to provide a copy of the teletype report to defense counsel, and this was done. But the court denied the request that the prosecutor furnish a more complete criminal record, saying, in the single sentence:

> "Then you may furnish—I'm not going to require you to check with the F.B.I. or any other police agency to see whether any of your witnesses have criminal convictions, but will you furnish the information that you just mentioned to [defense counsel] when you meet with him this evening?"

Upon trial the next day, after defense counsel's motion for a continuance was denied, defense counsel asked the witness Ryan about his previous convictions and the witness testified to convictions of "joy riding in '69 in San Diego," "bad checks around '69 * * * in Redding, California," "petty theft * * * of a tape recorder in Anderson, California," and "drunk driving in Redding." Defendant thus did, in fact, impeach the witness, Ryan.

It is my conclusion that the trial court did not abuse its discretion under the circumstances in refusing to grant a continuance.

I would affirm.