Archie V. LEWIS, Appellant,

v.

UNITED STATES, Appellee.

No. 12288.

District of Columbia Court of Appeals.

Argued March 19, 1979.

Decided Sept. 20, 1979.

Richard T. Tomar, Washington, D.C., appointed by this court, for appellant.

William J. Mertens, Public Defender Service, Washington, D.C., with whom Silas J. Wasserstrom, Washington, D.C., was on the brief, appointed by this court as amicus curiae, for appellant.*

Peter E. George, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., at the time the briefs were filed, and John A. Terry, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before NEBEKER, MACK and FERREN, Associate Judges.

FERREN, Associate Judge:

After issuance of our first opinion and order in this case, *Lewis v. United States*, D.C.App., 393 A.2d 109 (1978), the government petitioned for rehearing. We granted the petition (without vacating our opinion and order) to give further consideration to Parts IV and V of that opinion, specifically to the government's arguments that (1) the impeachable convictions of government witnesses are not *Brady* material,[1] automatically producible at trial upon request, and that (2) even if they are, this court's order is too broad.

After further review, we reaffirm our ruling.

I.

In our first opinion, we dealt with six issues inherent in "the trial court's failure to require the government to supply defense counsel, at trial, with all impeachable convictions of government witnesses." 393 A.2d at 113–14.[2] In summary, we held:

1. Impeachable convictions of government witnesses are putative "*Brady* material," *see* note 1 *supra,* producible by the government at trial upon a defense request. 393 A.2d at 114–15.

2. In response to such a request, "a defendant is entitled to learn about the impeachable convictions which the government itself possesses—and no more." *Id.* at 116. The prosecutor does not have an additional "duty to investigate—and come to know—information which the defendant would like to have but the government does not possess." *Id.* at 115.

3. The government's knowledge of impeachable convictions "is not limited to the personal knowledge of the particular prosecuting attorney." *Id.* at 116. More specifically:

The government, and thus its prosecutorial agent, is deemed to know about all prior convictions of government witnesses which happened to be listed in the government's records accessible to the prosecution; for example, from the United States Attorney's Office (including the Washington Area Law Enforcement System, WALES), the Metropolitan Police Department records file, or the FBI. [*Id.* (citations omitted).]

4. If a defendant knows the name of a government witness before trial, and the courthouse Criminal Information Center contains a record of an impeachable conviction of that witness (under the name known to defendant), then there has been "no 'suppression' of *Brady* material" warranting production by the government at trial, *id.;* the defendant can be expected to have obtained that information himself.

5. Under certain circumstances, juvenile delinquency adjudications are includible within the government's obligation to produce impeachable convictions. "In the light, however, of *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), we

---

1. We refer to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In our first opinion we stated: "This case concerns putative '*Brady* material,' by which we mean exculpatory information, material to a defendant's guilt or punishment, which the govern-

ment knew about but failed to disclose to the defendant in time for trial." *Lewis, supra* 393 A.2d at 114 (citations omitted).

2. The term "impeachable convictions" refers to the classes of convictions designated by Congress in D.C. Code 1973, § 14–305 for use in impeaching witnesses under specified circumstances.

cannot conclude that all juvenile delinquency adjudications are not producible for impeachment purposes" under the *Brady* rule. 393 A.2d at 118.

6. The case accordingly was remanded to the trial court for further proceedings and findings as to whether the government had suppressed impeachable convictions and/or delinquency adjudications which might have affected the outcome. We prescribed an *in camera* method for trial court consideration of juvenile delinquency adjudications. *Id.* at 118–19.

## II.

A. The government argues that our order requiring disclosure of all impeachable convictions at trial, upon request, is conceptually unsound. The government points out, first, that our principal authority, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the Supreme Court cases interpreting *Brady*, e. g., *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) and *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), concern retrospective looks at particular evidence withheld by the government; they do not create categories of automatically producible government evidence. To reinforce the point, the government stresses that three United States Circuit Courts of Appeal have held, on the facts, that due process had not been violated by failure to disclose impeachable convictions. *United States v. Crockett*, 534 F.2d 589, 601–03 (5th Cir. 1976); *United States v. Atkinson*, 512 F.2d 1235, 1239 (4th Cir. 1975); *United States v. Miller*, 499 F.2d 736, 743–44 (10th Cir. 1974).[3] Second, according to the government, the impeachable convictions of its witnesses are rarely "material either to guilt or to punishment" of the accused, *Moore, supra* 408 U.S. at 794, 92 S.Ct. at 2568; thus, it is especially inappropriate for this court, as a constitutional matter, to require their automatic production at trial. Third, although the govern-

ment at oral argument confirmed its "usual practice" of disclosing such convictions to defense counsel at trial, upon request, *see United States v. Engram*, D.C.App., 337 A.2d 488, 489 (1975), *cert. denied*, 423 U.S. 1058, 96 S.Ct. 793, 46 L.Ed.2d 648 (1976), that practice, we were told, is limited to convictions which happen to be known to an individual prosecutor and is a matter of prosecutorial grace, not constitutional obligation.

■ We agree with the government's first point that *Brady* and later Supreme Court cases have been retrospective evaluations, *i. e.*, decisions as to whether a defendant's due process rights had been violated by the government's withholding of particular evidence. For that reason, we acknowledged that not all impeachable convictions of government witnesses will be material to guilt or punishment, 393 A.2d at 115; thus, failure to disclose them, upon request, will not necessarily lead to automatic reversal. *Id.*

Nevertheless, as the government doubtless would agree, these Supreme Court rulings are premised on the view that due process requires pretrial (or at least at-trial) disclosure, upon a specific request, of evidence material to guilt or punishment. *See Agurs, supra* 427 U.S. at 106, 96 S.Ct. 2392; *Moore, supra* 408 U.S. at 794, 92 S.Ct. 2562; *Brady, supra* 373 U.S. at 86–87, 83 S.Ct. 1194.

> Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of [the] request is material, *or indeed if a substantial basis for claiming materiality exists*, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. [*Agurs, supra* 427 U.S. at 106, 96 S.Ct. at 2399 (emphasis added).]

While it is therefore true that the constitutional question commonly comes up retrospectively, the due process underpinning of

---

**3.** *Contra, United States v. Seijo*, 514 F.2d 1357, 1363–65 (2d Cir. 1975), *cert. denied*, 429 U.S. 1043, 97 S.Ct. 745, 50 L.Ed.2d 756 (1977).

*Brady-Agurs* is a command for disclosure *before* an accused has to defend himself.

■ It is here that we part company with the government. Contrary to its second contention, we cannot accept the argument that impeachable convictions are rarely material to guilt or punishment. For reasons explained below, we reaffirm our conclusion that "the likelihood of materiality is sufficiently strong for the *Brady* rule to mandate production of all impeachable convictions of government witnesses—at least the convictions the government knows about." 393 A.2d at 115 (footnote omitted). It follows, in response to the government's third point, that because every defendant is entitled to the benefit of a mandatory rule, due process cannot be satisfied by the disclosure of only those convictions which a particular prosecutor fortuitously possesses; a more uniform approach is required.

We turn now to an elaboration of these points.

B. We begin from the premise that "impeaching evidence" is exculpatory and thus can be material to guilt or punishment, within the meaning of *Brady. See Williams v. Dutton,* 400 F.2d 797, 800 (5th Cir. 1968), *cert. denied,* 393 U.S. 1105, 89 S.Ct. 908, 21 L.Ed.2d 799 (1969). Indeed Congress, by providing for impeachment of witnesses by reference to their prior convictions, has made a legislative finding that such impeachment is likely to be material to the outcome.[4] Commonly, therefore, federal district court judges, presented with defense motions to produce impeachable convictions of government witnesses, have ordered their disclosure at trial as a matter of due process, citing *Brady. See. e. g., United States v. Quinn,* 364 F.Supp. 432, 445 (N.D.Ga.1973), *aff'd on other grounds,* 514

F.2d 1250 (5th Cir. 1975); *United States v. Houston,* 339 F.Supp. 762, 766 (N.D.Ga. 1972); *United States v. Eley,* 335 F.Supp. 353, 358 & n. 4 (N.D.Ga.1972); *United States v. Leichtfuss,* 331 F.Supp. 723, 736 (N.D.Ill.1971); *United States v. Johnson,* 298 F.Supp. 58, 65 (N.D.Ill.1969); *United States v. Leta,* 60 F.R.D. 127, 131 (M.D.Pa. 1973).[5]

In none of these cases has the court required the defendant, as the moving party, to satisfy the test of materiality normally associated with a retrospective *Brady-Agurs* inquiry, namely, materiality to outcome. Instead, these courts, in effect, have deemed impeachable convictions to be automatically producible.[6] On the premise that there can be a pretrial ruling under *Brady,* this abandonment of the material-to-outcome test is necessary because there can be no objective, ad hoc way to evaluate before trial whether an impeachable conviction of a particular government witness will be material to the outcome. No one has that gift of prophecy. To argue that the court can apply a material-to-outcome test before trial is to argue a contradiction. *See generally Agurs, supra* 427 U.S. at 107–08, 96 S.Ct. 2392. It also raises the serious possibility that a defendant may be forced, unfairly, to disclose his or her case before trial, in an effort to carry a virtually impossible burden.

■ As a practical matter, therefore, we are left with two, quite different alternatives when there has been a specific defense request under *Brady:* (1) mandate at-trial disclosure of all known impeachable convictions of government witnesses, on the theory that the likelihood of materiality to outcome from this category of evidence is suf-

---

4. Recently, in fact, we have held that in adopting § 14–305, Congress even had an "expansive view" of the categories of misdemeanors suitable for impeachment. *Bates v. United States,* D.C.App., 403 A.2d 1159, at 1161 (1979).

5. In each of these cases, the court, citing *Brady, supra,* either ordered at-trial production of the criminal records of government witnesses *(Quinn; Houston; Eley; Johnson; Leta )* or ordered pretrial production *(Leichtfuss ).*

6. In one of these cases, the district court considered whether impeachable convictions might be "material to the preparation of any particular defendant's defense"—the test normally associated with discovery requests under Super. Ct.Cr.R. 16. *Johnson, supra* at 65. *See generally Wiggins v. United States,* D.C.App., 386 A.2d 1171, 1176 (1978) (Ferren, J., concurring) (compares retrospective, appellate review of alleged violations of *Brady* and Rule 16).

ficiently strong that a fair trial requires it; or (2) leave disclosure entirely to the discretion of the prosecutor, on the theory that, absent coverage of impeachable convictions by Super.Ct.Cr.R. 16,[7] the only valid constitutional inquiry is a post-trial *Brady-Agurs* analysis, applying a material-to-outcome test to the defendant's belated, fortuitous discovery of convictions withheld by the government. Accordingly, because of the impossibility of predicting "materiality to outcome" before trial, we do not see a middle ground (utilizing trial court discretion) between a mandatory disclosure rule and one premised solely on prosecutorial discretion.

The second, discretionary alternative is the correct one for cases in which there has been no defense request. *See Agurs, supra* 427 U.S. at 108, 96 S.Ct. 2392. But in case of a specific request, we read *Agurs, supra* at 106, 96 S.Ct. 2392, as authority for a mandatory disclosure rule. We agree with the federal district courts which essentially have applied such a rule, *see* note 4 *supra*, for we, too, perceive a substantial possibility—which is especially strong in the case of a key government witness—that impeachment with prior convictions will affect the outcome, whether it goes to general credibility, *see United States v. Seijo,* 514 F.2d 1357, 1363–65 (2d Cir. 1975), *cert. denied,* 429 U.S. 1043, 97 S.Ct. 745, 50 L.Ed.2d 756 (1977), or to a more specific target of reliability, such as bias, which may be demonstrated by showing, for example, that the witness is currently on probation and could have reason to curry favor with the government. *See Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Gillespie v. United States,* D.C.App., 368 A.2d 1136 (1977). *See generally Giglio v. United*

*States,* 405 U.S. 150, 154–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

More specifically, we believe that this mandatory, at-trial disclosure rule is inherent in *Brady-Agurs* for two reasons. First, from a pretrial perspective, the government's argument that impeachable convictions are not likely to affect the outcome begs the question; it basically says that because appellate courts have found no materiality to outcome in a few *other* cases, the defendant should not have the opportunity to demonstrate that impeachment can affect the outcome in *this* case. To the contrary, a defendant's actual use of convictions for impeachment at trial—before the jury decides—is a better test of materiality than a retrospective inquiry by an appellate court, limited to review of a less-than-vivid trial transcript, or an even later evaluation in a collateral proceeding under D.C.Code 1973, § 23–110 (motion attacking sentence). It follows, in the words of *Agurs, supra* 427 U.S. at 106, 96 S.Ct. at 2399, that a defendant is entitled to disclosure because "a substantial basis for claiming materiality exists"; a defendant should have no less a constitutional claim to at-trial disclosure of exculpatory information, when he or she has a chance to make use of it, than to post-trial appellate or collateral analysis of omitted evidence (which, absent a fortuity, the defendant will not even discover). In short, the defendant, not the post-trial reviewing court, should have control over materiality to outcome.

Second, if the government were permitted, as a matter of unreviewable pretrial discretion, to give only certain defendants access to the impeachable convictions of its

7. In 1975, the House of Representatives voted to amend Fed.R.Cr.P. 16 to permit a defendant to discover the names of the government witnesses to be called at trial, as well as their records of convictions (presumed accessible from FBI rap sheets), provided that the government have a reciprocal right of discovery triggered by the defense request. *See* H.R.Rep. No. 247, 94th Cong., 1st Sess. 12–16, *reprinted in* [1975] U.S.Code Cong. & Ad.News, pp. 674, 684–88. The Senate, as well as the Senate-House Conference, rejected the amendment out of concern for the safety of government witnesses if their names were disclosed prior to trial. H.R.Conf.Rep. No. 414, 94th Cong., 1st Sess. 12, *reprinted in* [1975] U.S.Code Cong. & Ad.News, pp. 713, 716. The focus, therefore, was on pretrial disclosure of government witnesses, not on at-trial disclosure of impeachable convictions of government witnesses whose identities the government had disclosed. Thus, this rejection of the Rule 16 amendment has no bearing on the questions presented in this case.

witnesses, this would build an irregularity into the criminal trial process which is subject to unfair application, with overtones suggesting denial of equal protection as well as due process. The government is not in a position to be a perfect arbiter of defense strategy, let alone a defendant's constitutional rights. It follows that the government's current policy of disclosing only those impeachable convictions about which a particular prosecutor happens to be aware makes the criminal trial process too fortuitous, and thus unfair, in a significant respect. We conclude, accordingly, that the integrity of the criminal trial process requires uniformity of access to impeachable convictions of government witnesses when requested.

■ This mandatory rule is not an unwarranted, de facto amendment of Super. Ct.Cr.R. 16. As elaborated at note 6 *supra,* Congress rejected an amendment to Fed.R. Cr.P. 16 permitting pretrial discovery of government witnesses and their criminal records; Congress did not reject at-trial disclosure of the criminal records of government witnesses whose identities had already been revealed. Furthermore, given a defendant's statutory right to use impeachable convictions, *see* note 2 *supra,* the government has no legitimate interest in precluding disclosure of the convictions listed in its "records accessible to the prosecution." 393 A.2d at 116.

Nor do federal circuit court decisions cited by the government foreclose a mandatory, at-trial disclosure rule. *See Crockett, supra; Atkinson, supra; Miller, supra.* They merely have made a retrospective, outcome-determinative evaluation, holding on particular facts that the government's failure to disclose impeachable convictions did not result in a denial of due process warranting reversal. (After a similar factual analysis, however, the circuit court in *Seijo, supra,* held to the contrary.) In none of these circuit court cases have the judges had to consider due process from a pretrial perspective, as the federal district courts have—and as we do here.

■ In summary, given (1) the legislative finding inherent in § 14–305 that use of impeachable convictions is likely to affect the outcome, (2) the *Brady-Agurs* concept of due process, and (3) the incongruity of leaving the decision about the potential impact of impeachable convictions of government witnesses in the hands of the prosecutor, we reaffirm our conclusion that the risk of a *Brady* violation from the failure to disclose impeachable convictions of government witnesses is so substantial that the right to a fair trial is implicated in the absence of a pretrial enforcement mechanism. Although it may be somewhat strained to conclude that potentially all impeachable convictions can affect the outcome, we believe it is more strained to assume, as the government does, that failure to disclose such convictions is *not* likely to affect the outcome—an assumption contrary to Congress' implicit finding in adopting § 14–305. If the government's assumption were ever to be false, there would not merely be an undisclosed violation of the government's constitutional duty under *Brady.* More significantly, there might very well be an unwarranted criminal conviction. We therefore reaffirm our holding that if the government knows about a prior conviction of one of its witnesses, usable for impeachment under D.C.Code 1973, § 14–305, then Fifth Amendment due process requires the government to disclose that conviction to the defendant, upon request.

### III.

■ We turn now to the government's second concern: the scope of our order—the extent to which we have deemed the prosecutor to "know" about impeachable convictions by virtue of pervasive access to "government" records. More specifically, the government has attempted to show, upon rehearing, why FBI records should not be covered by the general rule.

The government notes our statement that "[t]he *Brady* principle does not imply a prosecutor's duty to investigate—and come to know—information which the defendant would like to have but the government does

not possess." 393 A.2d at 115. The government then argues that we contradicted this statement, in effect, by "deeming" the prosecutor to "know" impeachable convictions from too wide a variety of government sources, in particular the FBI. *See id.* at 116.

Consistent with the government's concern, we have acknowledged the need for a "cautious" approach to the question of what "government" records the prosecutor shall be deemed to know. *Id.*

> Our caution is derived from the unique relationship of the United States Attorney's Office (*i. e.,* of the federal government) to the District of Columbia criminal process, and from our resulting concern that the knowledge imputable to the prosecutor not be unreasonably pervasive—or unduly limited—by his affiliation with the federal, not the local, government. We do not resolve here, for example, whether United States government records in agencies not normally involved in the District of Columbia criminal process are "accessible" to the prosecutor for this purpose. Nor do we decide whether records technically belonging to the District government but routinely available to the United States Attorney are "government" records under the test. These questions require briefing and argument in a factual context. [*Id.*]

Despite our effort not to decide too much, however, the government informs us that we were not cautious enough—that our inclusion of FBI records among those which the prosecutor is deemed to know was too hasty, based on insufficient information. Although FBI "rap sheets," including arrest and conviction information, concededly are accessible to the United State Attorney's Office, we are told that the burdens inherent in seeking FBI information about thousands of government witnesses are severe

on both the FBI and the prosecutor's office,[8] and that, even when requests are made, it is impossible to be sure that a particular rap sheet corresponds to a particular government witness unless the witness' fingerprints or an FBI identification number have been supplied for verification. Not uncommonly, the government says, the prosecutor's submission of a witness' name to the FBI, absent fingerprints or an identifying number, will result in receipt of several rap sheets for different persons with the same or similar names. The government therefore argues that it cannot realistically comply with our first opinion and order—at least not without unduly burdening the United States Attorney's Office and the FBI and, perhaps more importantly, without invading its witnesses' privacy (for conviction verification purposes) to the point of deterring them from cooperating with the prosecution.

We find the government's arguments unpersuasive for several reasons. First, the government concedes that the prosecutor has easy access to FBI rap sheets; thus, we were not astray in deeming the United States prosecuting authority to know these records in this United States investigative agency's files. Second, in view of a defendant's statutory right to use impeachable convictions and the potential impact on outcome of the trial—a constitutional dimension—we cannot be impressed by the privacy argument as an abstract proposition. All the prosecutor need do is forward to the FBI the standard demographic information it obtains in the normal course of interviewing its witnesses, including full name and address (plus, perhaps, date of birth). We do not perceive this to be an undue invasion of privacy. Third, once a government witness has been disclosed to the defense, it would not be impractical for the trial court, out of the presence of the jury, to resolve

---

**8.** The government asserts: "Our computer statistics show that at initial screening we have averaged 15,340 lay witnesses per year since 1974 in the Superior Court. Since we do not update our computer with additional witnesses after initial screening we are unable to compute the actual number of citizens who ultimately become government witnesses. However, because many witnesses, especially in felony cases, are discovered during the course of grand jury investigations the true number of government witnesses would be considerably greater."

whether that witness is the individual identified in a particular rap sheet. If necessary, the witness can be examined. If, because of multiple rap sheets, the matter is still too ambiguous to assure the court that the witness has an impeachable conviction, then the court can rule accordingly.[9] Finally, the financial costs to the government cannot be relevant here. If a defendant has a constitutional right to the disclosure of impeachable convictions or adjudications, the government must bear that cost, whatever it is.

We therefore reaffirm our statement that the United States Attorney's Office shall be deemed to know all prior convictions of government witnesses which happen to be listed in FBI rap sheets.[10]

■ One may argue that, before reaching these conclusions, we should remand for findings on the government's contentions about the burdens this decision will impose on the United States Attorney's Office and the FBI (including not only the administrative costs but also the potential deterrent effect on cooperation from potential government witnesses)—in contrast with the benefits from materiality to outcome realistically to be expected by defendants. Such a remand, in effect, would be for a cost-benefit analysis of defendants' and the public's respective stakes in the impeachable convictions issue. Such analysis, however, would require the court to make findings of "legislative" or "social" facts—findings about patterns of behavior—as well as apply complex social science methodology which may or may not be able to supply a meaningful answer. Trial courts are not well equipped to do this. *See generally* D. L. Horowitz, The Courts and Social Policy, 45–51, 274–284 (1977).[11] Thus, we believe it would serve no useful purpose to remand the case. As we have indicated earlier, Congress, in adopting D.C.Code 1973, § 14–305, must be said to have made not merely a normative judgment but also, as a predicate to that judgment, a factual determination that use of impeachable convictions will, on balance, be material to outcome and thus enhance the overall fairness of the criminal trial process. This court, in turn, decides here what due process requires in implementing that statute. If the burdens on the government imposed by due process indicate that the use of impeachable convictions should be generally reviewed, from the public's as well as the defendant's viewpoint, that review should be undertaken initially by the legislature, not the courts.

## IV.

We should add a few words on the trial court's *in camera* consideration of juvenile records. *See* 393 A.2d at 117–19. Our dis-

9. We leave it to the trial court to determine whether, in a particular case of a critical government witness, that witness should be asked to resolve the matter by providing fingerprints for conviction identification purposes—even during the trial if the government has not previously disclosed the witness. *See State v. Coney*, 294 So.2d 82, 87–88 (Fla.1974).

10. We do not agree with the view expressed in *United States v. Eley, supra* at 358, that the prosecutor is only deemed to know FBI records containing impeachable convictions of government witnesses in cases in which the FBI has had an investigative role. That is an irrational distinction. If the prosecutor can be deemed to know any FBI rap sheet, it must be said to know them all; and "if a substantial basis for claiming materiality exists," *Agurs, supra*, 427 U.S. at 106, 96 S.Ct. at 2399, then that factor should be controlling.

It is interesting to note that a number of state courts, for purposes of applying discovery rules, have found FBI rap sheets to be within the constructive possession of state prosecuting authorities. *See, e. g., Coney, supra* 294 So.2d at 86–88; *State v. Humphrey*, 217 Kan. 352, 357–60, 537 P.2d 155, 160–62 (1975); *State v. Ireland*, 11 Or.App. 264, 267–68, 500 P.2d 1231, 1233 (1972).

11. Courts normally limit their findings to "legal" facts. "The conventional legal conception of a 'fact' is an event that has transpired or is likely to transpire, or a state of affairs in existence or likely to be in existence: 'an actual occurrence,' says *Black's Law Dictionary*. A legal fact, in other words, though not necessarily in the past, nevertheless has a static quality to it. Social facts, by contrast, involve patterns of behavior. They are therefore not necessarily immutable. . . . *Social facts* are the recurrent patterns of behavior on which policy must be based." D. L. Horowitz, *supra* at 275, 45.

cussion of this subject was limited to the procedure for a retrospective inquiry about the materiality of a suppressed juvenile delinquency adjudication—if any—against witness Thomas. We did not consider how, in future cases, the trial court should handle *in camera* consideration of juvenile records prior to trial when materiality to outcome cannot as realistically be considered.

Soon after our first opinion in this case, this court decided *Smith v. United States,* D.C.App., 392 A.2d 990 (1978), in which we held, on the facts, that the trial court's refusal to permit impeachment of a witness' general credibility with a juvenile delinquency adjudication did not violate the defendant's Sixth Amendment right to confront witnesses. *Compare Brown v. United States,* 119 U.S.App.D.C. 203, 338 F.2d 543 (1964) (prior delinquency adjudication may not be used to impeach general credibility of witness) *with Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (prior delinquency adjudication is admissible to impeach witness for bias). We also held on the facts—not categorically—that the juvenile record, which went to general credibility, not bias, "was not 'material' to the issue of guilt" and therefore did not violate due process under *Brady, supra.* 392 A.2d at 993 n.3.

Helped by the analysis in *Smith, supra,* and guided by practical considerations, we conclude that juvenile delinquency adjudications shall be treated as follows:

1. If a defendant makes a timely pretrial request for impeachable convictions (deemed to include juvenile delinquency adjudications), the prosecutor shall file a record of all accessible delinquency adjudications with the trial court, but not with defense counsel, along with a representation as to whether, to the government's knowledge, any juvenile adjudication, under the circumstances, can be said to imply the witness' bias against the accused.

2. If on the basis of the government's representation—or later on the basis of the witness' testimony at trial—the court concludes that the juvenile adjudication goes to bias, the court shall order its disclosure to the defense.

3. If the court concludes, prior to completion of the witness' testimony, that the adjudication does not go to bias, the court shall withhold it from the defense unless the court becomes convinced that impeachment of the witness on the basis of the adjudication is likely to be material to the outcome. In that case the court shall order its disclosure to the defense.

4. In the event of conviction, the trial court shall inform defense counsel as to whether it possesses a requested but undisclosed juvenile record. If it does, the court, in event of appeal, shall transmit that record under seal to this court, for consideration in accordance with the procedures established for the present case. *See* 393 A.2d at 118–19.

### V.

For the reasons elaborated above, we reaffirm our ruling.

*So ordered.*

NEBEKER, Associate Judge, concurring:

I concur that the special rules for the benefit of convicted juveniles must give way under due process and that juvenile records of witnesses may be producible at trial to show bias and, if the court determines that the records will likely be material to the outcome, to impeach a witness's general credibility. I emphasize that this rule applies equally to all parties, *i. e.,* juvenile adjudications of both government and defense witnesses may be producible at trial subject to the procedure specified in the court's opinion.