**Wayne HUMBERSON, Plaintiff,**

v.

**UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA, Defendant.**

**No. CIV.A. 02–2179(ESH).**

United States District Court, District of Columbia.

Jan. 10, 2003.

William F. Causey, Barry J. Pollack, Nixon Peaboby LLP, Washington, DC, for Plaintiff.

Jane M. Lyons, United States Attorney's Office, Washington, DC, for Defendant.

### MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiff Wayne Humberson, an officer employed by the United States Park Police, brings this suit challenging his continued inclusion on the so-called "*Lewis* list" of police officers under investigation for misconduct. Contending that defendant, the United States Attorney's Office for the District of Columbia, has violated his Fifth Amendment due process rights by retaining his name on the *Lewis* list for an unreasonable period of time, plaintiff now seeks a preliminary injunction ordering his removal from the list. On January 4, 2003, the Court informed the parties that, pursuant to FED. R. CIV. P. 65(a)(2), it would consolidate its decision on the preliminary injunction with its decision on the merits. Because plaintiff has no constitutionally cognizable property interest that has been jeopardized by defendant's actions, he cannot state a Fifth Amendment claim. Accordingly, plaintiff's application for a preliminary injunction will be denied, and his suit will be dismissed under FED. R. CIV. P. 12(b)(6).

### BACKGROUND

The background to this action begins on December 28, 1999, when plaintiff and two other police officers arrested Melvin Smith in Northwest D.C. on suspicion of drug distribution. During the arrest, the officers forcibly tackled Smith, injuring his left arm and shoulder. Smith subsequently filed an excessive force complaint against plaintiff and one of the other arresting officers, which led the U.S. Attorney's Office for the District of Columbia to launch an investigation of the incident. As a result of this investigation, defendant placed plaintiff on the *Lewis* list. This list grows out of the D.C. Court of Appeals' decision in *Lewis v. United States*, 408 A.2d 303 (D.C.1979), which requires the government to turn over to criminal defendants information regarding the "impeachable convictions" of government witnesses.[1] The U.S. Attorney's Office maintains the list as a computerized file containing the names of police officers who are under investigation for misconduct, and usually discloses the names of officers appearing on the list to defendants against whom those officers may be called to testify. *See United States v. Bowie*, 198 F.3d 905, 907–08 (D.C.Cir. 1999).

It is not clear when exactly the investigation of plaintiff began or when his name was first placed on the *Lewis* list, although in December 2001 plaintiff was interviewed by the U.S. Attorney's Office in connection with the arrest of Smith. (Compl. ¶ 18.) While the record does not indicate the results of this interview or what subsequent action, if any, defendant has taken, the investigation remains open and plaintiff has not been told when it is likely to conclude. (Def.'s Opp. at 3.) On November 5, 2002, plaintiff filed the instant action, asserting that the U.S. Attorney's Office was violating his right to procedural due process by allowing his name to remain on the *Lewis* list while taking "no meaningful action to close or expedite its investigation of him."[2] (Compl. ¶ 15.) Plaintiff's consti-

---

1. *Lewis* information is understood to encompass impeachment evidence that challenges a witness's credibility and thereby comes within the rules set forth by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

2. This is not the only lawsuit spawned by the December 1999 incident. On October 9, 2002, Smith filed a suit against, *inter alia*, Humberson and the Park Police under the

tutional claim is based only on the allegation that his name has "languished" on the list, not on the fact that it was placed there initially. (Compl.¶¶ 25–27.) He asserts that because of this continued listing, his employer, the Park Police, no longer allows him to perform certain aspects of his job, including making arrests, testifying on behalf of the government, or participating in undercover operations, and that his prospects for career advancement are thereby diminishing. (Compl. ¶¶ 16–17; Pl.'s Mot., Ex. A. [Humberson Dec.] ¶ 8.) Arguing that these changes in his duties have deprived him of a property interest secured by the Fifth Amendment, plaintiff contends that defendant has a constitutional obligation to afford him a prompt opportunity to have his name removed from the list.

Plaintiff now seeks a preliminary injunction compelling defendant to take this step. (Pl.'s Mot. at 1.) Because the issues presented in this application for preliminary relief are entirely legal and require no further development of the record, the Court has elected to consolidate its decision on the preliminary injunction with its final decision on the merits.

## ANALYSIS

■ The Due Process Clause requires the government to provide certain procedural protections whenever it deprives an individual of property, which the Supreme Court has defined as the "interests that a person has already acquired in specific

benefits." *Board of Regents v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The first step in assessing any due process claim, therefore, is to ensure that the claimant actually has a cognizable property interest that has been jeopardized by governmental action.[3] *See American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). In the absence of such an interest, no due process claim can proceed.

It is familiar law that property interests are not created by the Constitution; rather, they are derived from independent sources, such as state or federal law, statutes, regulations, contracts, or other existing rules or understandings. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Doe v. Gates,* 981 F.2d 1316, 1320 (D.C.Cir. 1993). In order to have a constitutionally protected property interest in a particular benefit, a claimant must have more than "an abstract need and desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701. In the public employment context, it is well-settled that government employees enjoy such an entitlement when governing law—be it statute, regulation, or contract—provides that they may be discharged only for cause. Thus, an employee who can be discharged only for cause has a property interest in continued employment, and cannot be terminated without due process of law. *See Gilbert*

Federal Tort Claims Act and Section 1983, seeking damages for what he contends was an unlawful and excessively forceful arrest. *See Smith v. United States,* Civ. Action No. 02–1985(ESH).

**3.** Of course, the Fifth Amendment protects not just property, but also liberty. In this case, however, plaintiff has never claimed, and does not now argue that defendant has deprived him of a constitutionally recognized

liberty interest. The Court therefore need not consider whether being named on the *Lewis* list, in conjunction with the loss of job-related opportunities that it has apparently entailed, constitutes the type of harm necessary to trigger a liberty-related due process claim. *See Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Cutshall v. Sundquist,* 193 F.3d 466, 470 (6th Cir.1999).

*v. Homar*, 520 U.S. 924, 928–29, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997); *Loudermill*, 470 U.S. at 538–39, 105 S.Ct. 1487 (finding such an interest in state civil service protections that allow employees to remain in their jobs "during good behavior and efficient service").

In the present case, plaintiff contends that as a federal employee covered by the Civil Service Reform Act ("CSRA"), Pub.L. 95–454, 92 Stat. 1111 *et seq.* (codified, as amended, in various sections of 5 U.S.C.), he has a property right in his position that is protected by the Fifth Amendment. To this end, he asserts, and defendant does not dispute, that he is a "Competitive Service" employee.[4] (Pl.'s Reply at 2). As such, Chapter 75 of the CSRA protects plaintiff against suspension for a period greater than 14 days, reduction in grade or pay, furlough, or removal without cause. *See* 5 U.S.C. § 7513(a) (such actions can be taken *"only* for such cause as will promote the efficiency of the service.") (emphasis added).[5] The existence of these protections has led courts to conclude that Competitive Service employees possess a legitimate expectancy of, and therefore a property interest in, continued federal employment. *See Buchholz v. Aldaya*, 210 F.3d 862, 867 (8th Cir.2000);

*Stone v. FDIC*, 179 F.3d 1368, 1375 (Fed. Cir.1999).[6]

However, while these provisions do give plaintiff a property interest in his job, it does not follow that he has such an interest in every aspect of his job, or that the Fifth Amendment protects him from employment actions short of those described in Chapter 75. Indeed, plaintiff here has not been discharged from his job, nor has he been furloughed or suspended.[7] Neither his grade nor his salary has been reduced. Instead, the only change in plaintiff's employment status that has resulted from his being on the *Lewis* list is that he has been precluded from performing certain tasks (doing undercover work, testifying in court, etc.) that he once was allowed to perform. However, this sort of reassignment is not regulated by Chapter 75, and thus the "for cause" provisions that limit employer discretion—and engender employee property interests—simply do not apply in this case.

■ Perhaps recognizing that nothing in Chapter 75 creates a property interest in particular duties associated with a federal job, plaintiff seeks instead to rely on Chapter 23 of the CSRA, which he suggests mandates that "Competitive Service employees will not have their job duties

---

4. The CSRA divides the federal civil service into three categories: "Senior Executive Service"; "Competitive Service"; and "Excepted Service." Competitive Service employees are all employees for whom nomination by the President and confirmation by the Senate is not required—except for certain high-level executive branch officials—and who are not specifically excepted from the competitive service by statute or by statutorily authorized regulation. *See* 5 U.S.C. § 2102; *United States v. Fausto*, 484 U.S. 439, 441 n. 1, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988).

5. In contrast, an employee may be suspended for a period of 14 days or less "for such cause as will promote the efficiency of the service." 5 U.S.C. § 7503(a).

6. Excepted Service employees do not enjoy these protections and, accordingly, the D.C. Circuit has held that such employees have no property interest in continued federal employment. *See Garrow v. Gramm*, 856 F.2d 203 (D.C.Cir.1988); *Twist v. Meese*, 854 F.2d 1421, 1428 (D.C.Cir.1988).

7. The statute defines "suspension" as "the placing of an employee, for disciplinary reasons, in a temporary status without duties and pay." 5 U.S.C. § 7501(2). Plaintiff does not argue, nor could he, that losing the ability to perform certain aspects of his job constitutes a suspension within the meaning of the CSRA.

changed significantly 'on the basis of conduct which does not adversely affect the performance of the employee or others.'" (Pl.s' Reply at 3 (quoting 5 U.S.C. § 2302(b)(10).)) As an initial matter, this selective quotation is highly misleading. While it is true that a "significant change in duties, responsibilities, or working conditions" is included in the CSRA's definition of "personnel action," 5 U.S.C. § 2302(a)(2)(A)(xi), neither Chapter 23 nor any other portion of the statute provides that such an action may only be taken for cause. The language that plaintiff excerpts from § 2302(b)(10) certainly does not have this effect; that provision makes it a "prohibited personnel practice" to "discriminate for or against any employee . . . on the basis of conduct which does not adversely affect the performance of the employee." This protects federal employees against discrimination, not against changes in the scope of their work assignments.

While the other prohibited practices enumerated in § 2302(b) do offer "limited" protection against such changes, *Fausto*, 484 U.S. at 459, 108 S.Ct. 668, they do not thereby create property rights. Significantly, these provisions do not allow employees to avoid changes in work assignments except for cause, but rather forbid employers from imposing such changes out of particular illicit motivations, such as racial discrimination, § (b)(1)(A), nepotism, § (b)(7), and retaliation for whistleblowing, § (b)(8). *See Carducci v. Regan*, 714 F.2d 171, 174 n. 3 (D.C.Cir.1983). And therefore, because these restrictions neither use the "for cause" language typically the hall-

mark of a property right in employment, *see Loudermill*, 470 U.S. at 538–39, 105 S.Ct. 1487, nor set forth "so comprehensive a list of prohibited reasons for discharge that an employee would reasonably have as great an expectation of continued employment as one who knows he cannot be fired except for cause," the D.C. Circuit has specifically held that Chapter 23 does not create a property interest in any aspect of a federal job. *See Garrow*, 856 F.2d at 206–07.[8]

Therefore, nothing in the CSRA gives federal employees a property interest in performing particular aspects of their jobs, which would preclude their duties and responsibilities from being rearranged without due process. Nor has plaintiff identified any other legal restriction on the ability of federal employers to assign their employees to tasks that the employer considers to be appropriate, or to bar employees from tasks considered to be inappropriate, at least where the employees are not also deprived of rank, grade, or pay.

While the absence of such restrictions suffices to scuttle plaintiff's constitutional claim, it is also appropriate to note that federal courts have uniformly concluded that a change in a public employee's duties (or, similarly, a lateral transfer) unaccompanied by a reduction in salary is *not* a sufficient deprivation to trigger due process obligations. *See Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 539 (10th Cir.1995) ("[T]he overwhelming weight of authority holds that no protected property interest is implicated when an employer

---

8. Although *Garrow* involved an employee in the Excepted Service, *see supra* n. 5, there is nothing in its conclusions about Chapter 23 that would be limited to Excepted Service employees or that would suggest greater property rights for Competitive Service employees. Indeed, by its terms, Chapter 23 protects Excepted Service and Competitive Service employees equally, and does not make the kinds of distinctions between them that are found in Chapter 75. *See* 5 U.S.C. § 2302(a)(1)(B); *Fausto*, 484 U.S. at 446, 108 S.Ct. 668.

reassigns or transfers an employee absent a specific statutory provision or contract term to the contrary."); *Ferraro v. City of Long Branch*, 23 F.3d 803 (3d Cir.1994) (holding that change in work assignment, whereby a supervisor was assigned menial tasks such as garbage collection and shoveling sand that were outside the scope of his duties, did not amount to a deprivation of a property interest); *Huang v. Bd. of Governors*, 902 F.2d 1134, 1142 (4th Cir. 1990) (finding that transfer, or intradepartmental demotion, without loss of rank or pay, does not impinge upon a property interest); *Maples v. Martin*, 858 F.2d 1546, 1550 (11th Cir.1988) ("Transfers and reassignments have generally not been held to implicate a property interest."); *Lewandowski v. Two Rivers Public School Dist.*, 711 F.Supp. 1486, 1495 (E.D.Wis. 1989) ("mere transfers and reassignments have generally not been held to constitute a constructive discharge or to implicate a constitutionally protected property interest"). This is true even for employees who have a property interest in their job that protects them from actual or constructive discharge. *See, e.g., Fields v. Durham*, 909 F.2d 94, 98 (4th Cir.1990) ("Although we recognize the significance of an employee's property interest in retaining employment, we have previously held that the constitutionally protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services."). Thus, the Seventh Circuit has concluded, on facts closely analogous with those here, that the "injury that results when a person is temporarily deprived of his right to wear a uniform and a badge, to carry a gun, to arrest people, and to carry out the other functions of a police officer" is the kind of

*de minimis* harm that cannot support a due process claim. *Swick v. City of Chicago*, 11 F.3d 85, 86–87 (7th Cir.1993).

Powerful policy considerations underlie these decisions. To hold that plaintiff has a property interest in all aspects of his job, and therefore that due process must be extended whenever any of his specific duties or responsibilities are changed, would essentially convert any personnel decision made by a public employer into a constitutional case. This would deprive employers of the flexibility they need to make staffing decisions and to assign particular tasks to particular employees. It would allow courts to usurp the role of employers in deciding how employees are to be allocated and when workers with particular assets, or particular liabilities, should perform one set of tasks and not others. These are unsettling prospects, as the case law properly recognizes. *See, e.g., Ferraro*, 23 F.3d at at 806 (holding that to make "routine employment decisions" subject to constitutional review would "erect[ ] a barrier to ordinary management determinations regarding the assignment and duties of employees"); *Parrett v. City of Connersville*, 737 F.2d 690, 693 (7th Cir. 1984) ("A contrary conclusion would subject virtually all personnel actions by state and local government agencies to potential federal damage suits under 42 U.S.C. § 1983—a breathtaking expansion in the scope of that already far-reaching statute, and one remote from the contemplation of its framers."); *Brown v. Brienen*, 722 F.2d 360, 364–65 (7th Cir.1983) ("Disputes over ... work assignments ... do not implicate the great objects of the Fourteenth Amendment.").[9]

**9.** These concerns are especially pressing where, as in the present case, the employee has been reassigned out of a concern for the public interest or public safety. In *Townsend*

*v. Vallas*, for instance, the Seventh Circuit held that a public school teacher had not been deprived of a property interest when he was temporarily transferred from his teaching po-

In sum, even taking as true plaintiff's claim that because of his inclusion on the *Lewis* list, he has been barred from performing certain forms of police work, these deprivations do not amount to a deprivation of a property interest protected by the Fifth Amendment. Nothing in the CSRA, or in any other provision of law, confers upon plaintiff a cognizable property interest in making arrests, doing undercover police work, or the like. There are, moreover, compelling policy concerns that counsel against the recognition of such an interest. Accordingly, defendant has no constitutional obligation to provide plaintiff with any procedural safeguards while it continues its investigation. On the facts alleged in this case, the retention of plaintiff's name on the *Lewis* list is simply not a matter subject to the Due Process Clause.

## CONCLUSION

For the reasons given above, the Court holds that plaintiff has been deprived of no constitutionally protected property interest by virtue of remaining on the *Lewis* list, and thus that his procedural due process claim cannot succeed. His motion for preliminary injunction is therefore denied and this case is dismissed for failure to state a claim.

## *ORDER*

For the reasons given in the Memorandum Opinion issued today, it is hereby

**ORDERED** that plaintiff's Motion for Preliminary Injunction is **DENIED**; and it is

sition, with full salary, pending the investigation of the death of a student for which the teacher was suspected of being partially responsible. "This type of temporary reassignment in the wake of a serious safety incident is a foreseeable aspect of the duties of being a teacher.... Consequently, such a temporary

**FURTHER ORDERED** that this action is **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

This is a final appealable order.

removal from the classroom, specifically circumscribed for an important educational purpose, does not constitute a removal from a teaching position that can be characterized as the deprivation of a cognizable property right." 256 F.3d 661, 676 (7th Cir.2001).