UNITED STATES of America,
Appellee,

v.

Molden ATKINSON and Jimmy Cicero
Atkinson, Appellants.

Nos. 74–1034, 74–1035.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 30, 1974.

Decided Feb. 24, 1975.

Robert N. Levin, Washington, D. C. (Silver, Freedman & Levin, Washington, D. C., John D. McConnell, Jr., and Broughton, Broughton, McConnell & Boxley, Raleigh, N. C., on brief), for appellants in both cases (Gene Braswell, Goldsboro, N. C., on brief for appellants in No. 74–1034; Herbert B. Hulse, Goldsboro, N. C. on brief for appellants in No. 74–1035).

Christine A. Witcover, Asst. U. S. Atty. (Thomas P. McNamara, U. S. Atty., and Joseph W. Dean, Asst. U. S. Atty., on brief), for the U. S.

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and WIDENER, Circuit Judge.

WIDENER, Circuit Judge:

The appellants, Molden and Jimmy Atkinson, whose cases were consolidated for trial, were convicted by a jury of both counts of a two count indictment [1] for possession of heroin with intent to distribute and for distribution of heroin, both in violation of 21 U.S.C. § 841(a)(1).[2] Jimmy Atkinson, a young

---

1. The two counts of the indictment:

*First Count*—That on or about the 18th day of July, 1973, in the Eastern District of North Carolina, JIMMY CICERO ATKINSON and MOLDEN ATKINSON did knowingly, willfully and intentionally possess with the intent to distribute a controlled substance as defined in Title 21, United States Code, Section 812, Schedule I(b)(10), said controlled substance being and consisting of approximately five and one-quarter (5¼) spoons of heroin, in violation of the provisions of Title 21, United States Code, Section 841(a)(1).

*Second Count*—That on or about the 18th day of July, 1973, in the Eastern District of North Carolina, JIMMY CICERO ATKINSON and MOLDEN ATKINSON did knowingly, willfully and intentionally distribute a controlled substance as defined in Title 21, United States Code, Section 812, Schedule I(b)(10), said controlled substance being and consisting of approximately five and one-quarter (5¼) spoons of heroin, in violation of the provisions of Title 21, United States Code, Section 841(a)(1).

2. The relevant portion of the statute, 21 U.S.C. § 841 reads:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; . . .

adult offender, was committed to the custody of the Attorney General for 15 years, and Molden Atkinson was committed for 15 years on each of the two counts with the terms to run consecutively.

They have raised, through briefs filed by two different sets of attorneys, a number of issues regarding their trial. These issues include: (1) Were they prejudiced by remarks and comments of the trial judge and entitled to a mistrial? (2) Did the trial court commit reversible error in its charge to the jury with respect to their alibi defense? (3) Whether the government failed to disclose information as to the criminal background of a prosecution witness and whether there was such perjured testimony by that witness as to require a new trial? (4) Did the court err in not ordering production under the Jencks Act, 18 U.S.C. § 3500, of a report filed by a prosecution witness? (5) Did the court improperly allow a prosecution witness to identify the appellants following a photographic line-up? There is an additional issue raised as to Molden Atkinson only which is whether the trial court committed reversible error in imposing consecutive sentences for the two counts on which he was convicted. We find no error except that relating to the sentencing of Molden Atkinson.

The convictions here stem from a heroin purchase made by an agent of the State Bureau of Investigation of North Carolina, Curtis Douglas. On July 18, 1973, Douglas made contact with the Atkinsons in Goldsboro, North Carolina. Present with Douglas at the time was Arthur Burke, a confidential informant, who introduced Douglas to Molden Atkinson. Burke was present throughout the transaction. Douglas asked Molden Atkinson about the possibility of purchasing some heroin and Molden thereafter agreed to sell it to Douglas. Douglas, Burke and Molden Atkinson then proceeded to Molden's home, where they were joined shortly by Jimmy Atkinson, who had earlier conferred with his brother out of the presence of the two prosecution witnesses. The heroin was then produced by the Atkinsons and Douglas paid them $1200. At trial, they presented an alibi defense.

Issues (1) and (2), relating to the court's comments at trial and the court's instruction as to the alibi defense, were raised in a brief filed by the retained counsel who represented the appellants at trial. Also raised in that brief was the question of the sentencing of Molden Atkinson. After this brief was filed, Molden Atkinson filed a pro se petition on behalf of himself and his brother Jimmy. In this petition, he disclaimed the first brief and requested additional time to file another brief. Thereafter, new counsel was retained by the appellants and a second brief was filed. In the second brief, the issues above numbered (3), (4) and (5) were raised.

As to the first issue, the appellants contend they were denied a fair trial by the court by virtue of remarks and actions of the trial court in the presence of the jury. Appellants allege that the trial court erred in not granting their motion for mistrial based on the challenged remarks. In their brief on appeal, appellants contest statements by the trial judge to the effect there should be no repetitious cross-examination, comments by the judge directing counsel to limit certain cross-examination relating to the alibi defense, inquiries by the court of counsel as to the purpose and relevance of certain direct examination of a defense witness, requests by the court to limit certain lines of questioning, allowance by the judge of a "line" or "running" objection to the defense counsel as to certain testimony, and a statement by the trial judge that he hoped to hear certain testimony before the court recessed for Thanksgiving. The defendants do not claim error in any one of these actions and statements of the court, but contend that taken together they could only have the effect of prejudicing the jury against them.

A motion for mistrial based on certain acts and statements of the trial judge was made after the evidence was con-

cluded, in chambers, and not transcribed by the court reporter. The trial court, giving the defendants the benefit of the doubt, summarized the substance of the motion as an objection to the demeanor of the court in its attempt to pressure the attorneys to shorten the examination and cross-examination and also as an objection to the court's attempts to bring out certain facts. ·

 Counsel then stated that their motion for mistrial was "certainly not as extensive as the court indicated." They stated they were not badgered and that they were able to present their evidence "pretty well," but that they felt they had been prejudiced by a statement the court had made regarding cross-examination of a government witness. What the defendants apparently referred to was the judge limiting the cross-examination of an expert chemist who had identified the substance as heroin. After an extensive cross-examination as to the way he made the tests, the judge finally required the defendants' attorney to ask a conclusory question to get to the point. We find no error. The trial judge may impose reasonable limits on the extent of cross-examination. 3A Wigmore on Evidence, § 944 (Chadbourn rev. 1970).

In reviewing the statements of the trial court, we find that the court did not abuse its discretion. A reading of the transcript does not show any atmosphere hostile to the defendants; neither does it show any partiality of the trial judge nor any indication by him as to his opinion as to the character or credibility of the defendants, or their guilt.

· It is the duty of a trial judge to see that the facts of the case are properly developed and that the jury is not left in confusion. United States v. Ostendorff, 371 F.2d 729, 732 (4th Cir. 1967), cert. den., 386 U.S. 982, 87 S.Ct. 1286, 18 L.Ed.2d 229 (1967). In fulfilling this duty, the court may act to clarify testimony and restrict questioning that the court feels will be unproductive and confusing. We stated in Simon v. United States, 123 F.2d 80, 83 (4th Cir. 1941),

cert. den., 314 U.S. 694, 62 S.Ct. 412, 86 L.Ed. 555 (1941), that it "cannot be too often repeated, or too strongly emphasized, that the function of a federal trial judge is not that of an umpire or a moderator at a town meeting." The trial judge, through strictly maintaining impartiality, has "no more important duty than to see that the facts are properly developed and that their bearing upon the question at issue are clearly understood by the jury." *Simon*, at 83.

 In addition, the trial judge here properly instructed the jury to draw no inference against either side to whom an admonition of the court may have been addressed, not to assume the court held any opinion on the matters to which its questions related, and to judge for themselves the questions of fact of the case without regard to what the court may have said during the trial. We are of opinion there was no error in refusing to grant the mistrial, and so far as the cumulative effects of the trial judge's rulings are claimed to have deprived the defendants of a fair trial, we find no error, much less plain error as claimed.

The second issue, raised as plain error, is whether the trial court committed reversible error in its charge to the jury with respect to the alibi defense. The portion of the charge now being challenged is: "If, after consideration of all the evidence you have a reasonable doubt whether the defendants were present at the time and place the alleged offense was committed, you should acquit the defendants, otherwise you should convict them."

Appellants assert that this language may have left the jury with an incorrect impression as to the requirement that the government must prove beyond a reasonable doubt all the elements of the offense charged. In support of this assertion, the appellants cite Baker v. United States, 324 A.2d 194 (D.C.C.A. 1974). In that case the Court of Appeals for the District of Columbia held prejudicial an instruction that read: "If the Government does prove to you beyond a reasonable doubt that the Defendant did

not act in self-defense, then you must find the Defendant guilty."

■ The *Baker* case is distinguishable from this case in two significant respects. First, in *Baker* there was objection at trial to the contested instruction, while no objection was made by the appellants in the case at hand. Second, even assuming that error might be found in the contested instruction in isolation, such was cured by the trial judge when he instructed the jury that they were "not to single out one instruction alone as stating the law, but you must consider the instructions as a whole," and that, as to both counts of the indictment, "I remind you that the burden is always upon the prosecution to prove beyond a reasonable doubt every essential element of the offense charged in the . . . indictment."

Reading the contested instruction with the charge as a whole, we find no plain error and decline to reverse. F.R.Cr.P. 52(b).

The third issue raised is an assertion that the government failed to disclose information as to the criminal background of prosecution witness Arthur Burke and that Burke committed such perjury as to require a new trial. Burke testified that he had not been arrested or convicted of any narcotics related offense, but admitted to narcotic addiction and prior convictions of non-narcotics related offenses. After the trial, appellants' counsel investigated Burke's background and discovered a variety of narcotics arrests of Burke, many or all of which were not prosecuted. Also discovered were convictions of a non-narcotics related nature that Burke had failed to disclose at trial.

Appellants contend that the drug cases not prosecuted were highly relevant in light of Burke's denial that he was a paid informer. The jury, appellants assert, had a right to know the nature and quality of the witness.

■ Defendants contend the government violated its duty to disclose information they now feel it should have discovered relating to Burke's background. There is, however, no allegation that the United States Attorney had knowledge of any perjury or the information alleged to have been withheld. Indeed, defendants' brief takes pains to point out there is no claim that the prosecuting attorney had this knowledge at the time of the trial. We do not feel the government prosecutor here had any duty under the standard set in Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), to disclose information to the defense when it is not even charged that government attorneys were in possession of the information. *Giglio* goes to the denial by a witness, who was an accomplice, of an agreement not to prosecute him, which the government later admitted existed, not the denial by a witness, not an accomplice, on cross-examination of facts which are cumulative and go to his credibility, and the true state of which was not known, and may not be inferred to have been known by this record, to the prosecutor.[3]

■■ In connection with the evidence as to Burke's prior arrests, appellants filed with this court a motion under F.R. Cr.P. Rule 33 for Stay of Further Proceedings and Remand, based on the newly discovered evidence as to Burke's criminal background. We deny the motion. First, the defendants have not

---

**3.** Burke freely admitted on the witness stand a substantial criminal record and that he was an informer. He stated that he was only paid his expenses, and the very narrow question of whether he was paid anything else or whether he was a regular informer is apparently the real thing the defendants take issue with.

We have also considered Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1934) (known use of perjured testimony); Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173,

3 L.Ed.2d 1217 (1959) (deliberate failure to correct denial, by a witness who was an accomplice, of an agreement to recommend a reduced sentence, which agreement had been made by the assistant prosecuting attorney); and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (failure of prosecuting attorney to disclose exculpatory statement upon request). We are of opinion none of these cases require reversal here.

shown they meet the requirement that they show that the failure to learn of the evidence was not due to lack of diligence on their part. United States v. Costello, 255 F.2d 876, 879 (2nd Cir. 1958), cert. den. 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958); 2 Wright, Federal Practice and Procedure, Criminal, § 557, pp. 515, 520–22. We feel also that a motion for a new trial on the ground of after discovered evidence should more properly be made in the district court. See 2 Wright, Federal Practice and Procedure, Criminal, § 557, p. 534. While we deny the motion for remand, the denial is without prejudice to the defendants to make the motion for a new trial on the ground of after discovered evidence in the district court should they be so advised. People of the Territory of Guam v. Inglett, 417 F.2d 123 (9th Cir. 1969). We express no opinion upon the merits of such motion if made.

The defendants assert error by the court in not ordering the production under the Jencks Act, 18 U.S.C. § 3500, of a written report by the witness Douglas. At trial, they did not request the report but rather sought only the notes used by the witness to refresh his memory, which were turned over to them.

■ Since no motion for production of the report was made at the trial, they may not now complain. The language of the Jencks Act is clear that a request is necessary to require production under that Act. Without such a motion, failure of the government to voluntarily produce the report is not error. Its existence was known of and discussed during the examination of the witness.

■ The defendants also challenged a photographic identification made by Douglas prior to trial, and allege that the use of a photographic array may have tainted his identification of the appellants, and that the government should have produced the photographs for inspection by the defense. The fact that Douglas had viewed a photographic array in which he identified the defendants was first brought out on cross-examination. They did not object to the reference to the photographic line-up nor did they request that the pictures be produced. There is no indication in the record that the array was impermissibly suggestive. The record rather suggests there was substantial opportunity and an independent basis for Douglas to have made an identification without needing assistance from a photographic array. Neither do we think there was any duty to turn over the photographs to the defense when no request was made for them.

■ Appellant Molden Atkinson asserts that the two 15-year sentences imposed on him exceeded the permissible sentencing limit for his involvement in the drug transaction. On the facts of this case, we agree. His possession of the drug was not shown to exist separately from the moment in which the heroin was transferred to the government agent. Only when he produced the heroin for the sale was his possession shown to exist. Under these circumstances, while the single act was proof of two offenses, we are of opinion it was not the intent of Congress to increase the maximum sentence when two violations of the same subsection of the statute are shown by a single act. Cf. Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957).

Our ruling as to sentencing under 21 U.S.C. § 841(a)(1) is based on the limited factual situation presented here. We do not reach the question of multiple sentencing under other situations which may or may not arise.

The judgment of the district court is accordingly affirmed except as to the sentencing of Molden Atkinson. The case is remanded to the district court for the sole purpose of its vacating one of the two sentences imposed on him.

Affirmed in part; reversed in part; and remanded.