887 F.2d 1081
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Samuel Alberto ESCRUCERIA-DELGADO, Defendant-Appellant.
 No. 87-5671.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 7, 1989.
Decided: Sept. 1, 1989.
Rehearing and Rehearing In Banc Denied Sept. 26, 1989.
 
 Peter David Goldberger (Alan Ellis, Pamela A. Wilk, Law Offices of Alan Ellis, P.C., on brief), for appellant.
 Sara Bradkin Criscitelli (Margaret P. Currin, United States Attorney, on brief), for appellee.
 Before ERVIN, Chief Judge, CHAPMAN, Circuit Judge, and JOSEPH F. ANDERSON, JR., United States District Judge for the District of South Carolina, sitting by designation.
 ERVIN, Chief Judge:
 
 
 1
 Samuel Alberto Escruceria-Delgado appeals his conviction and sentences on twenty-one narcotics related offenses. Finding sufficient evidence to support the jury's verdict and no prejudicial error in the proceedings below, we affirm both the conviction and the sentences.
 
 
 2
 Defendant-appellant Samuel Escruceria was indicted in June, 1987, in the Eastern District of North Carolina on 21 counts of a 32 count indictment. The charges included eight counts[1] of interstate travel in aid of racketeering, in violation of 18 U.S.C. Sec. 1952, six counts[2] of possession with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1), and six counts[3] of distributing cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). Indicted with Escruceria were three co-defendants, Escruceria's son, Samuel Escruceria-Manzi ("Beto"); Beto's wife, Maria; and Fernando Mancayo-Gomez ("Mancayo"). Beto and Maria have yet to be apprehended, and Mancayo entered a negotiated plea and testified against Escruceria at his trial.
 
 
 3
 The evidence presented at trial was primarily testimonial, and the government's key witnesses included Mancayo and Guillermo ("Bill") Gutierrez, a Colombian national, who resided in Wilmington, North Carolina, between 1982 and 1984. During that time Gutierrez sold large quantities of cocaine in the area, and he testified that Escruceria helped recruit him to sell cocaine smuggled into this country by the Escruceria family. He stated that appellant checked with him on several occasions to see how Gutierrez's business was going, and offered him advice on dealing the drugs. Gutierrez further testified that on one occasion Escruceria travelled to Wilmington to deliver cocaine to him and receive payment from Gutierrez. Gutierrez also provided details on how his transactions with the Escruceria family worked, and explained the mechanics of the Escrucerias' importation of the cocaine into Miami from Colombia.
 
 
 4
 Taken in its entirety, the government's evidence demonstrated that several members of the Escruceria family were heavily involved in the cocaine importation and distribution business. Appellant's primary role was to negotiate the purchase of cocaine in South America, and to arrange the shipment of the drugs into the United States via one of several organized pipelines ("lines") that smuggled drugs to particular geographic areas in this country.
 
 
 5
 The jury convicted Escruceria on all 21 counts, and the trial court sentenced him to consecutive terms of twenty years for conspiracy, five years for each of the eight Travel Act violations, and fifteen years on each of the six possession with intent to distribute and each of the six distribution counts, for a total of 240 years. This imprisonment is to be followed by three year special parole terms on each of the distribution counts. Additionally, Escruceria was fined $505,000.
 
 
 6
 Escruceria now appeals his conviction on all 21 counts, alleging insufficient evidence to sustain his convictions, a defective indictment, error by the trial court in admitting certain evidence, and in passing sentence, and improper remarks by the prosecutor in his opening and closing statements.
 
 I. The Twenty Substantive Counts
 
 7
 Escruceria first claims that the jury lacked sufficient evidence to convict him on each of the twenty substantive counts. Escruceria's conviction on these counts required proof that he aided and abetted[4] Gutierrez in using interstate commerce to obtain the cocaine, in possessing the drugs with the intent to distribute them, and in distributing the cocaine. "In order to aid and abet another to commit a crime, it is necessary that a defendant 'in some sort associate himself with the venture, that he seek by his action to make it succeed.' " United States v. Pino, 608 F.2d 1001, 1003 (4th Cir.1979), quoting Nye v. Nissen, 336 U.S. 613, 619 (1949). Association means the defendant shared in the criminal intent of the principal. Participation means that the defendant "engaged in some affirmative conduct designed to aid the venture." United States v. Colwell, 764 F.2d 1070, 1072 (5th Cir.1985). It is not necessary that a defendant have participated in all aspects of a crime to be convicted of aiding and abetting. See United States v. Garrett, 720 F.2d 705, 712 (D.C.Cir.1983); United States v. Fischel, 686 F.2d 1082, 1087 (5th Cir.1982). United States v. Hewitt, 713 F.2d 1381, 1385 (11th Cir.1981).
 
 
 8
 The requirement that Escruceria have shared in the criminal intent of Gutierrez in possessing the cocaine with the intent to distribute, and in actually distributing the cocaine, was satisfied by inferences drawn from the large quantities of cocaine Escruceria helped to supply Gutierrez. This court has held that in cases involving quantities of narcotics "too large for personal consumption," one may infer an intent to distribute. See, e.g., United States v. Manbeck, 744 F.2d 360, 390 (4th Cir.1984).
 
 
 9
 To prove that Escruceria had the necessary criminal intent for the Travel Act violations, the government did not need to demonstrate that Escruceria specifically intended that interstate facilities be used to facilitate illegal conduct. Rather, the prosecution only had to prove that Escruceria intended to aid and abet the promotion, carrying on, facilitation, arrangement, or establishment of any unlawful activity, regardless of whether he knew interstate facilities were being used. See United States v. Stern, 858 F.2d 1241 (7th Cir.1988); United States v. Sigalow, 812 F.2d 783 (2d Cir.1987). This intent could clearly be inferred from the evidence of appellant's conduct produced at trial. Escruceria's participation in these activities was demonstrated specifically by: (1) his solicitation of Gutierrez as a customer, and his participation in the negotiations with Gutierrez concerning price and delivery of the cocaine; (2) his advice to Gutierrez on how to conduct his cocaine business; (3) his travel to Wilmington to help deliver cocaine to Gutierrez, and to collect money from him; and (4) his transportation of at least part of the cocaine proceeds back to Colombia.
 
 
 10
 Additionally, the testimony concerning Escruceria's drug related activities in Colombia helped the government to establish that appellant was an active participant in a family operated drug ring, which imported and sold cocaine in the United States. Each of the family members performed different functions in the business, and appellant's jobs were to negotiate the purchase of cocaine in South America, arrange importation into the United States, check up on Beto, who did most of the selling stateside, and transport proceeds from the United States back into Colombia. Although most of the testimony establishing these facts concerned conduct occurring after the transactions giving rise to the criminal charges in this case, the jury could infer from the evidence that the drug operation was in place at the time of all of the transactions in question.
 
 II. Indictment on Count One
 
 11
 Count 1 of the indictment charged Escruceria with a conspiracy in violation of 21 U.S.C. Sec. 846. The indictment stated that between May, 1983, and March, 1987, Escruceria conspired with a number of individuals to import cocaine into the United States, in violation of 21 U.S.C. Sec. 952, and to possess with the intent to distribute, and to distribute, that cocaine in violation of 21 U.S.C. Sec. 841(a). Escruceria challenges the validity of this indictment on two grounds.
 
 A. Duplicity
 
 12
 Escruceria first argues that the indictment attempts to charge two separate offenses in a single count, in violation of Fed.R.Crim.Pro. 8(a).[5] Escruceria bases his duplicity argument on Alberraz v. United States, 450 U.S. 333 (1981), which holds that Congress created two separate conspiracy offenses in Title 21, conspiracy to import and conspiracy to distribute. See also United States v. Tedder, 801 F.2d 1437, 1445-47 (4th Cir.1986) (upholding convictions on three separate conspiracy counts arising out of a single transaction, including conspiracy to distribute and conspiracy to import).
 
 
 13
 Assuming, arguendo, that Count 1 was duplicitous, Escruceria's conspiracy conviction can be reversed only if that duplicity constituted prejudicial error. The error asserted by Escruceria is a possible lack of jury unanimity. In this particular case the trial court instructed the jury on Count 1 only with respect to the conspiracy to import, and appellant did not object to this instruction. The jury never saw the indictment, and therefore it was never aware that Escruceria had been charged with conspiracy to distribute. Thus, the prejudicial error claimed by Escruceria simply could not have occurred. The only question before the jury was whether Escruceria had conspired to import cocaine, and the jury unanimously found that he did.
 
 
 14
 Furthermore, because the indictment itself contained the disjunctive phrase "and/or", the jury instructions did not constitute a constructive amendment of the indictment. That occurs only where the evidence offered at trial was such that it proved a factual basis which effectively modified one of the essential elements of the crime charged. See United States v. Chandler, 858 F.2d 254 (5th Cir.1988).
 
 
 15
 B. Importation As an Object of a Sec. 846 Conspiracy
 
 
 16
 The indictment charged Escruceria with violating 21 U.S.C. Sec. 846 by conspiring to violate both 21 U.S.C. Sec. 841(a)(1) and 21 U.S.C. Sec. 952. Section 846 provides for the punishment of "[a]ny person who ... conspires to commit any offense defined in this subchapter." Section 846 is located in subchapter I of Title 21, while Sec. 952 is found in subchapter II. A Sec. 952 violation is punishable under 21 U.S.C. Sec. 963, which contains language identical to that found in Sec. 846.
 
 
 17
 Escruceria claims that because a Sec. 952 violation is not punishable under Sec. 846, and because the jury found him guilty only of a conspiracy to import, his sentence on Count 1 must be vacated. Fed.R.Crim.Pro. 7(c)(3), however, provides that "[e]rror in the citation [of the statute which the defendant allegedly violated] or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to the defendant's prejudice." Because the language of Sec. 846 and Sec. 963 is identical, we find that Escruceria was not prejudiced by a misleading indictment. Precedent supports this finding. In United States v. Massuet, 851 F.2d 111 (4th Cir.1988), this court applied Rule 7(c)(3) to sustain the conviction of two defendants under Sec. 841(a)(1), even though the indictment charged them with violating Sec. 959(b)(2). The language of the two statutes was identical, and the court held that "the fortuity of an appropriate statute proscribing conduct charged in the indictment sustained the prosecution." 851 F.2d at 116. Such fortuity occurs again in this case. See also United States v. Rios, 611 F.2d 1335, 1338, n. 2 (10th Cir.1979) (holding that a conviction under Sec. 963 may be sustained, notwithstanding the indictment's citation to Sec. 846; United States v. Martinez, 496 F.2d 664, 669 (5th Cir.), cert. denied, 419 U.S. 1051 (1974) (affirming a conviction under Sec. 963, even though the indictment charged a conspiracy under Sec. 846).
 
 III. Testimony Concerning Request for Counsel
 
 18
 On March 12, 1987, a Wrightsville, North Carolina, police officer, Federal Customs Agent Michael Lemnah, and Miami Police Officer Perez, went to Beto's condominium in Miami Beach in search of Beto. There they found Escruceria. When asked to identify himself, Escruceria stated his name and produced his government I.D. and his passport. When Agent Lemnah began making notations from the passport, Escruceria snatched it back and stated that he would answer no further questions without the presence of his attorney and the Colombian consul. Lemnah then returned the passport and assured Escruceria that there was no need to call an attorney, as the government agents were leaving.
 
 
 19
 At trial the prosecution called Officer Perez, who had acted as an interpreter between Escruceria and Lemnah, to testify about the incident of March 12. In the middle of the government's direct examination of Perez, defense counsel asked the trial court to suppress Perez's anticipated testimony concerning Escruceria's request for an attorney. The trial court requested authority for the defense's argument that an individual not in police custody had the constitutional right to refuse to answer questions without the presence of an attorney. When defense counsel could produce no such authority, the trial court allowed the examination of Perez to continue. The prosecution then elicited the testimony concerning Escruceria's refusal to answer further questions without an attorney present. After Perez had answered the question, defense counsel objected and the trial court instructed the jury to disregard Perez's statement on this issue.
 
 
 20
 On appeal Escruceria again alleges that it was constitutional error to permit this testimony. As he did at trial, however, Escruceria fails to produce any authority for the proposition that this testimony infringed upon his constitutional right to counsel. In refusing to speak to police without an attorney, Escruceria was not asserting either his Fifth Amendment rights under Miranda, or his Sixth Amendment right to counsel. Those rights do not attach until a person is in police custody, or until the formal initiation of adversarial proceedings against an accused, respectively. See, e.g., Doyle v. Ohio, 426 U.S. 610, 616-620 (1976); Moran v. Burbine, 475 U.S. 412 (1986).
 
 
 21
 Escruceria also argues that Perez's testimony should have been excluded under Fed.R.Evid. 403, because it was more prejucicial than probative. Assuming, arguendo, that the evidence should have been excluded under Rule 403, given the trial court's instruction to the jury to disregard it, the question is whether the evidence was so prejudicial that the jury instruction failed to protect Escruceria's right to a fair trial.
 
 
 22
 Two recent Supreme Court decisions make clear that any prejudice caused by the prosecution's elicitation of the evidence concerning Escruceria's refusal to talk without the presence of an attorney was countered by the trial court's prompt instructions to the jury to disregard that evidence. In Richardson v. Marsh, --- U.S. ----, 107 S.Ct. 1702, 1707-08, 95 L.Ed.2d 176, 182 (1987), the Court held that unless there exists an "overwhelming probability" that the jury will be unable to obey a trial court's instructions that it disregard an incriminating inference, the admission of certain evidence will not constitute reversible error. Thus, in Richardson, the Court upheld the admission of a codefendant's confession which had been redacted to omit any reference to the respondent. Respondent was linked to the confession, however, by other evidence properly admitted against her at trial. The Court deemed the admission of the confession nonprejudicial, because the trial court twice instructed the jury that the confession was not to be considered against the respondent.
 
 
 23
 In Green v. Miller, --- U.S. ----, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), the Court held that a prosecutor's question at trial concerning a criminal defendant's post-arrest silence did not constitute reversible error, even though the prosecution should have known such evidence was inadmissible. The Court reasoned that "[t]he sequence of events in this case--a single question--an immediate objection, and two curative instructions--clearly indicates that the prosecutor's improper question did not violate [the defendant's] due process rights." --- U.S. at ----, 107 S.Ct. at 3109, 97 L.Ed.2d at 630-31. Because the same sequence of events occurred here, we find that the trial court's instructions to the jury to disregard Perez's statement rendered that testimony nonprejudicial.
 
 
 24
 Finally, we find that Escruceria's assertion that the prosecution acted in bad faith by eliciting this testimony from Perez, and that the trial court acted in bad faith by allowing the question to be asked, is without merit. It is clear from the record that the prosecution sincerely believed this evidence to be both relevant and admissible. At the bench conference the trial court asked for authority to suppress the evidence on constitutional grounds, but defense counsel produced none. The trial judge then apparently felt that he had no choice but to allow the question to be asked, and to give the defense an opportunity to object then, presumably on Rule 403 grounds. Unfortunately, defense counsel chose not to object until after Perez had answered the question. At that time, the trial judge promptly instructed the jury to disregard Perez's statements concerning Escruceria's request for an attorney.
 
 
 25
 IV. Opening and Closing Statements of the Prosecutor
 
 
 26
 Escruceria claims that improper remarks made by the prosecutor in both his opening and his closing statements were so prejudicial as to deprive him of a fair trial.
 
 
 27
 Whether improper argument by government counsel has so prejudiced the trial process as to require reversal must be gauged from the facts of each trial. United States v. Harrison, 716 F.2d 1050, 1051 (4th Cir.1983). The test for reversible prosecutorial misconduct generally has two components: "(1) the prosecutor's remarks or conduct must have in fact been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." United States v. Brockington, 849 F.2d 872, 875 (4th Cir.1988) (citations omitted).
 
 
 28
 If prosecutorial comments were in fact improper, this court looks to four factors to determine whether they were so damaging as to require reversal:
 
 
 29
 (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to direct attention to extraneous matters.
 
 
 30
 Harrison, supra, at 1052.
 
 A. Opening Remarks
 
 31
 "The prosecutor's opening statement should be an objective summary of the evidence reasonably expected to be introduced, and the prosecutor should not use the opening statement as an opportunity to 'poison the jury's mind against the defendant.' " Brockington, supra, at 875.
 
 
 32
 That part of the prosecutor's opening statement objected to by Escruceria is as follows:
 
 
 33
 Ladies and gentlemen, this is an organized crime case, an organized crime case involving an international cocaine conspiracy operated by the Escruceria family and controlled as the head of that family, the godfather, for lack of a better word, of that family by the defendant seated in the courtroom today, Samuel Alberto Escruceria-Delgado.
 
 
 34
 Escruceria claims that the prosecutor's reference to this as an "organized crime case," and an "international cocaine conspiracy" involving a "family operation," as well as his reference to Escruceria as the "godfather" of the family, were unduly inflammatory in that they brought to mind images of the Mafia. Clearly the second and third remarks were not improper. They were accurate descriptions of the case and, in and of themselves, they were not particularly inflammatory.
 
 
 35
 The prosecutor's use of the terms "organized crime" and "godfather," could be construed as improper. Under the four factors to be considered, however, it does not appear that the use of these terms unduly prejudiced Escruceria. The reference to Escuceria as a "godfather" was made only once, and the term "organized crime" was used only twice--once in opening and once in closing. Thus, these remarks were isolated, rather than recurring instances. There exists little likelihood, therefore, that these words "misled the jury to the prejudice of the defendant." Furthermore, in the absence of these remarks, there was sufficient proof to establish Escruceria's guilt. Finally, the trial judge immediately issued curative instructions, informing the jury that the remarks of counsel were not evidence.
 
 B. Closing Statement and Rebuttal
 
 36
 Escruceria also objected to the prosecutor's closing remarks which referred to this as an "organized crime case." As discussed above, however, the use of the term "organized crime," even if improper, appears to have been nonprejudicial. Escruceria further claims that the part of the prosecutor's rebuttal which discussed the Witness Protection Program ("WPP") was unduly prejudicial. These comments, however, appear to have been proper.
 
 
 37
 " 'The closing argument of the Prosecutor must be considered in light of the previous arguments of defense counsel in order to determine whether there was provocation for what the prosecutor said.' " Harrison, supra, at 1053, quoting United States v. Hoffa, 349 F.2d 20, 50 (6th Cir.1965), aff'd, 385 U.S. 293 (1966). In its closing, the defense had argued that Gutierrez's testimony was less than credible, because of the benefits inuring to him via the WPP. Specifically, defense counsel told the jury:
 
 
 38
 Now that he's arrested, what does Bill Gutierrez realize? Hey, they arrested this man on what I said over the telephone. This is my big ticket. He knows that he's a necessary witness. He knows that he's the only witness. He knows that the government needs him. So what happens now? He ups the ante. He says, Hey, I'm afraid. I'm afraid, the old deal isn't in tact anymore, I want more. I'm afraid. If I'm going to testify against this guy, you have to put me under the Witness Protection Program. What's the Witness Protection Program? They give a guy a new name, a new identity, and they give him a job somewhere. The prosecutor would have you think that he's going to jail. That's crazy. So, think about this.
 
 
 39
 In his rebuttal, the prosecuting attorney stated to the jury:
 
 
 40
 I also talked about the Witness Protection Program. [Defense] counsel told you that because several of the government's witnesses are in the Witness Protection Program and that means they are not going to jail, that Bill Gutierrez is not going to jail. That is completely wrong. The Witness Protection Program is approved by the Marshal Service, not by this office, not by the U.S. Attorney's office. It's approved by the Marshals and it's approved for those people who have a documented threat against their lives or their family's life by criminal organizations like the one headed by Delgado. And when he goes to jail, and he's facing twenty years, he will go in under the Witness Protection Program, which means he will be isolated so he doesn't get killed in jail. That's what the Witness Protection Program means, is to keep people who do decide to cooperate from getting killed by criminal organizations and heads of organizations like Delgado's. That's what it means.
 
 
 41
 We find that the prosecutor's rebuttal remarks concerning the WPP were invited by the defense counsel's statements concerning both the WPP and Gutierrez's lack of jail time, and were therefore proper.
 
 
 42
 Finally, Escruceria objects to the remark the prosecutor made in closing his rebuttal. The prosecutor stated:
 
 
 43
 Ladies and gentlemen, I thank you for your attention. I ask you to consider the evidence and then to hold this defendant accountable. Something has to be done and I ask you to hold this defendant accountable for every count so we can do something to stop this.
 
 
 44
 Escruceria claims that under United States v. Pupo, 841 F.2d 1235 (4th Cir.1988), such a statement was improper. Pupo involved a prosecutor who closed his argument "by urging the jury to 'make that statement so that we can address these types of conspiracies that are taking place in our community.' " 841 F.2d at 1240. The court found this remark improper because "it could suggest to the jury that they should convict the defendants not for their participation in these crimes, but merely to make a statement against narcotics crimes in general or to prevent future crimes." Id. The Pupo court went on to hold, however, that this statement did not constitute reversible error, commenting that, "the improper remarks were isolated and were not deliberately made to direct the jury's attention to extraneous matters. Although the evidence of guilt was not overwhelming ... it was adequate [and] the degree to which the remarks could have prejudiced the jury was relatively small." Id.
 
 
 45
 Even if improper, then, the prosecutor's remark on rebuttal does not appear to constitute reversible error. As in Pupo, the remark was isolated, and therefore the degree to which it could have misled and prejudiced the jury was small. Furthermore, the evidence of guilt in this case, while perhaps not "overwhelming," also appears to have been more than merely "adequate."
 
 
 46
 V. Merger of Convictions on Substantive Counts
 
 
 47
 Escruceria was convicted on six counts of aiding and abetting the possession of cocaine with intent to distribute, and six counts of distribution of cocaine. He argues that if the evidence was sufficient to sustain all twelve of these convictions, this court must nonetheless vacate the convictions on the possession counts and merge them with the distribution counts for sentencing purposes.
 
 
 48
 Escruceria bases this argument on United States v. Atkinson, 512 F.2d 1235 (4th Cir.1975). Atkinson held that where the defendant's possession of narcotics "was not shown to exist separately from the moment at which the heroin was distributed," the possession and distribution counts had to merge. 512 F.2d at 1240. Atkinson, however, limited its ruling to "the limited factual situation present" in that case, and the court specifically declined to "reach the question of multiple sentencing under other situations which may or may not arise." Id. Clearly, Atkinson, did nothing more than establish a rule that "consecutive sentences for possession and distribution may not be imposed where the only evidence of possession is possession at the time of distribution." See United States v. Hernandez, 750 F.2d 1256, 1259 (5th Cir.1985).
 
 
 49
 The evidence produced at trial demonstrated that Gutierrez took possession of one kilo of cocaine on six separate occasions. Each time he "stashed" the kilo for a period of time before distributing it. The distribution of the cocaine was made in small amounts, to a number of people, over a period of time. Because the possession of the drug was in fact separate from the subsequent acts of distribution, each of these acts was properly subject to consecutive sentences.
 
 VI. Sentencing Proceeding
 
 50
 Escruceria's final assertion is that if his convictions are sustained, his case must be remanded for resentencing because the district court did not impose a "final" sentence on him. Escruceria bases this argument on two statements by the trial judge, one made at the sentencing hearing and one written in a letter to defense counsel after that hearing.
 
 
 51
 Following the presentation of evidence at the sentencing hearing, the trial judge sentenced appellant to maximum terms on each count. The judge then stated:
 
 
 52
 The sentence, the one announced, is the one presently in effect. I want to say that since the sentence obviously included maximum sentences on all the counts at this time that it's not my intention that that will be the final sentence of the court, but if you fail to file a motion under 35 it would be the first time in seventeen years that I've presided over one of these in which [a defendant] I didn't.
 
 
 53
 While this statement is somewhat confusing, the record, read in its entirety, makes clear that the trial judge considered his sentence "final" for appeal purposes, but was letting counsel know that he would be open to receiving new evidence--such as evidence concerning Escruceria's financial status--on a Rule 35 motion for a reduction of sentence. In essence, the trial court suggested that defense counsel file a Rule 35 motion and that he show up for the hearing on that motion considerably more prepared than he had been for the sentencing hearing.
 
 
 54
 Escruceria's attorney immediately filed an appeal, and one week later wrote to the district court about appellant's financial status and parole considerations. The trial court responded with a letter, which stated in part: "I will in due course modify your client's sentence but will not do so pending the outcome of his appeal of which you gave notice in open court." This statement does nothing more than reflect the district court's correct understanding that it lacked jurisdiction to rule on a Rule 35 motion once notice of appeal had been filed. See United States v. Kerley, 838 F.2d 932, 941 (7th Cir.1988). It in no way indicates that the trial court had not entered a final sentence.
 
 
 55
 For the reasons set forth above, the convictions and sentences of Escruceria on each of the twenty-one counts are hereby
 
 
 56
 AFFIRMED.
 
 
 
 [1]
 Counts 2, 5, 6, 8, 11, 19, 24, 29
 
 
 [2]
 Counts 3, 9, 15, 20, 25, 30
 
 
 [3]
 Counts 4, 10, 16, 21, 26, 31
 
 
 [4]
 18 U.S.C. Sec. 2(a) provides that whoever aids and abets the commission of a federal offense is punishable as a principal
 
 
 [5]
 That rule permits the joinder of two or more offenses in the same indictment, so long as each is stated in a separate count